**UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

United States of America,

    Plaintiff,                                      Case No. 1:20cr041

        v.                                        Judge Michael R. Barrett

Sontez Sheckles,

    Defendant.

**OPINION & ORDER**

This matter is before the Court on Defendant's Motion to Suppress Evidence (Doc. 12); the United States' Response (Doc. 13); Defendant's Reply (Doc. 14); and the United States' Sur-reply (Doc. 16). Oral arguments were heard on August 26, 2020.

**I.    BACKGROUND**

The following facts are set forth in the Affidavit for Search Warrant executed by Officer Marcus McNeil (Doc. 12, PageID 41-42) ("McNeil Affidavit") and the Government's responsive pleading (Doc. 13). In the early morning hours of November 29, 2019, two shootings occurred, one in close proximity to, and one inside, the Chalet Bar in downtown Cincinnati, Ohio. The shooting outside of the Chalet Bar resulted in the death of victim Watson; and the shooting inside resulted in injury to victim Evans (Doc. 12, PageID 41; Doc. 13, PageID 45). Homicide detectives obtained the establishment's video surveillance tape. (Doc. 12, PageID 42). According to the McNeil Affidavit, the video shows Defendant pulling a handgun from his pocket, chambering a round, walking to the rear door and shooting the victim identified as Evans. (Doc. 12, PageID 42). The McNeil Affidavit states that Defendant was located and arrested the same day: November 29,

2019. (Doc. 12, PageID 42). Officers sought and obtained a search warrant for the contents of a cell phone. (Doc. 12, PageID 42). The McNeil Affidavit states that the cell phone was recovered from Defendant at the time of his arrest. The McNeil Affidavit states that the affiant "believes Sheckles may have used the [cell phone] to communicate with the victims involved in the offense, suspects in Watson's murder, and/or others who may have additional knowledge of the fact surrounding the offense." (Doc. 12, PageID 42).

**II.    ANALYSIS**

The Fourth Amendment prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. In deciding whether to issue a search warrant, the Fourth Amendment requires the issuing magistrate to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (internal alterations omitted).

This Court takes note of two important facts. First, the McNeil Affidavit is silent as to whether the video shows Defendant using the cell phone nor is there any other evidence that the cell phone was used in the above described events. Second, the reader of the McNeil Affidavit would reach the following conclusions: the shootings occurred in the early morning hours of November 29, 2019, homicide investigators interviewed witnesses and viewed video surveillance tape at the scene, and, that sometime thereafter

on the same day, Defendant was arrested and the cell phone was recovered on his person at the time of his arrest. In fact, the Government read the McNeil Affidavit in this way in its initial response to Defendant's Motion. (Doc. 13, PageID 46).

However, as Defendant points out in his Reply, he was actually arrested a month later on December 29, 2019. In its Sur-reply briefing, the Government concedes that the actual arrest date was, in fact, December 29, 2019. (Doc. 16). The same was stipulated at oral argument. The Government frames this discrepancy as a nullity and asks this Court to speculate that the state court judge who issued the search warrant would have realized this to be a typographical error. This Court is well-aware of the Sixth Circuit's typographical error exception:

> . . . Challenges to warrants based on typographical errors or factual inaccuracies typically fall under this Circuit's clerical error exception. We have consistently found that inadvertent drafting mistakes, for instance transposing a number in a street address or listing an incorrect nearby address, do not violate the Fourth Amendment's prohibition on unreasonable searches and seizures. That is because those errors create little risk of a mistaken search or a general warrant granting police an unconstitutionally broad authority to conduct searches.

*United States v. Abdalla*, No. 19-5967, 2020 WL 5050361, *1 (6th Cir. Aug. 27, 2020). This exception does not apply here. Whether the mistake was a typographical error is of little consequence when the error leads to an important misstatement of a fact critical to the probable cause finding.

While this Court must give great deference to an issuing court's determination of probable cause, this Court is limited to examining only "the information presented in the four-corners of the affidavit." *United States v. Crawford*, 943 F.3d 297, 305 (6th Cir. 2019) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)) and citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)). This Court is not second-guessing

3

the issuing court, but rather pointing out the problematic misinformation upon which it relied: that the shooting occurred in the early morning hours of November 29, 2019, Defendant was identified through video surveillance at the scene, and then later arrested on the same day with the cell phone in his possession.

Assessing the remainder of the McNeil Affidavit under the totality of the circumstances, this Court concludes the Affidavit did not provide a "substantial basis" from which the issuing court could conclude that probable cause was present to search Defendant's phone. *See Gates*, 462 U.S. at 238, 103 S.Ct. 2317. "When a warrant applicant seeks to search a specific location, the affidavit must establish 'a nexus between the place to be searched and the evidence to be sought.'" *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)). Without the temporal connection between the shooting and Defendant's arrest, the McNeil Affidavit lacks the required nexus. The McNeil Affidavit does not state that Defendant is seen using a cell phone in the surveillance video, or provide other evidence which would provide reasonable ground to believe that the cell phone recovered during Defendant's arrest was used in relation to the shootings. *Accord United States v. Griffith*, 867 F.3d 1265, 1271-72 (D.C. Cir. 2017) (search of residence invalidated in part because the warrant affidavit "conveyed no reason to think that [the defendant] owned a cell phone" or that evidence related to the homicide would be found on a cell phone); *cf. United States v. Titington*, No. 3:17-CR-00124-7, 2018 WL 6019649, at *4 (M.D. Tenn. Nov. 16, 2018) (reasonable to believe cell phone which driver had on his person was used to assist in the distribution of drugs where driver was found unconscious with a loaded Glock and 8.4 grams of cocaine within his reach).

In addition, Defendant was arrested a month after the shootings took place. A warrant must be supported by "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) (quoting *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932)). There is no evidence that the cell phone recovered from Defendant during his arrest was the phone he was using a month earlier when the shootings took place.

The Court also concludes that the evidence cannot be properly admitted pursuant to *Leon's* good-faith-reliance exception to the exclusionary rule. Under this exception, even if the warrant affidavit failed to provide probable cause, evidence should not be suppressed if it is "obtained in objectively reasonable reliance" on the defective warrant. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Supreme Court has identified four circumstances when an officer's reliance on the magistrate's decision would not be objectively reasonable: "(1) if the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) if the issuing magistrate failed to act in a neutral and detached fashion and merely served as a rubber stamp for the police; (3) if the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or where the warrant application was supported by nothing more than a bare bones affidavit; and (4) if the warrant was facially deficient in that it failed to particularize the place to be searched or the things to be seized." *United States v. King*, 227 F.3d 732, 753 (6th Cir. 2000) (citing *Leon*, 468 U.S. at 914-15, 104 S.Ct. 3405).

The Court finds that the third limitation applies here.[1] As the Sixth Circuit has explained, a "bare-bones" affidavit is commonly defined as one which states only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). A bare-bones affidavit is a conclusory affidavit, or one that asserts "only the affiant's belief that probable cause existed." *Id.* (quoting *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000)). Stated differently:

> It provides nothing more than a mere "guess that contraband or evidence of a crime would be found," *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994), either "completely devoid" of facts to support the affiant's judgment that probable cause exists, *United States v. Carpenter*, 360 F.3d 591, 595–96 (6th Cir. 2004) (en banc), or "so vague as to be conclusory or meaningless." *United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005) (quoting *Carpenter*, 360 F.3d at 596).

*Id.*

Here, Officer McNeil states in the Affidavit that he believes Defendant may have used the cell phone to communicate with the victims, suspects or others who might have information about the shootings, but there is nothing more to connect the cell phone to the shootings. In an analogous case, the Sixth Circuit concluded that the minimal nexus required to support an officer's good faith belief was not present:

> The only connection in the affidavit between 228 Shelby Street and drug trafficking was that Jackson police arrested McPhearson at his residence and found crack cocaine in his pocket in a search incident to the arrest. This connection cannot establish the minimal nexus that has justified

---

[1] This case does not fall into a typical *Leon* analysis. The difficulty here is that in this Court's mind, the potential for a probable cause determination hinges on a clear mis-statement of a material fact within the four corners of the affidavit. As noted above, the discrepancy in the factual assertion is not the type of "hyper-technical mistake" permitted but really the only lynchpin for probable cause accompanied by a bare-bones assertion. It is incongruous for this Court to ignore the mistake.

6

> application of the good-faith exception in cases where the nexus between the place to be searched and the evidence to be sought was too weak to establish probable cause. *See Frazier*, 423 F.3d at 536–37; *Carpenter*, 360 F.3d at 595–96; *United States v. Van Shutters*, 163 F.3d 331, 337–38 (6th Cir.1998); *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994); *Savoca*, 761 F.2d at 298–99. The application of the good-faith exception in *Frazier*, *Savoca*, and *Van Shutters* depended on the fact that each of the defendants were known to have participated previously in the type of criminal activity that the police were investigating. In *Frazier*, the defendant was a known drug dealer and drugs had been found at his prior residence. 423 F.3d at 537. In *Savoca*, the defendants had been identified as the perpetrators of a string of bank robberies in two states. 761 F.2d at 295–98. Similarly, in *Van Shutters*, the defendant had confessed to perpetrating an auto-theft scheme. 163 F.3d at 336–37. Finally, in *Shultz*, the court found that the minimal nexus was satisfied by the officer's reliance on his years of experience as a narcotics investigator and the knowledge he had acquired of drug dealers' business practices. 14 F.3d at 1098. Each of these additional facts, although not sufficient to establish probable cause, created the minimal nexus between the place to be searched and the evidence sought that would permit application of the good-faith exception.

*United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006). In this case, the additional facts are not present. Defendant was a suspect in the shootings based on the surveillance video, but the only connection between the cell phone and the shootings is that Defendant had the cell phone with him when he was arrested. While Officer McNeil states that from his training and experience he is aware that cell phones are used to facilitate criminal activity (Doc. 12, PAGEID# 42), there is nothing in the Affidavit which would indicate that Officer McNeil believed Defendant had used this particular cell phone in the shootings which were being investigated. As such, the McNeil Affidavit does not establish a "minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004).

### III. <u>CONCLUSION</u>

Accordingly, Defendant's Motion to Suppress (Doc. 12) is **GRANTED**.

**IT IS SO ORDERED.**

                                         */s/ Michael R. Barrett*
                                         Michael R. Barrett, Judge
                                         United States District Court